1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dale K. Galipo, Esq. (SBN 144074)
Melanie T. Partow, Esq. (SBN 254843)
**THE LAW OFFICES OF DALE K. GALIPO**
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118
dalekgalipo@yahoo.com
mpartow@galipolaw.com

Luis A. Carrillo, Esq. (SBN 70398)
Law Offices of Luis A. Carrillo
1499 Huntington Drive, Suite No. 402
South Pasadena, CA 91030
Tel: (626)799-9375
Fax:(626)799-9380
lac4justice@gmail.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLADIS HERRERA, individually and as successor in interest to Jose Raul Herrera; IVAN HERRERA, individually and as successor in interest to Jose Raul Herrera; and MARLON HERRERA, individually and as successor in interest to Jose Raul Herrera, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF ONTARIO, a municipality; and DOES 1 through 10, inclusive, <br><br> Defendants. | **Case No.:** <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. Excessive Force in Violation of the Fourth Amendment (42 U.S.C. §1983) <br> 2. Denial of Medical Care in Violation of the Fourth Amendment (42 U.S.C. §1983) <br> 3. Unlawful Interference with Familial Relations in Violation of the Substantive Due Process Clause of the Fourteenth Amendment (42 U.S.C. §1983) <br> 4. Municipal Liability (42 U.S.C. §1983) <br> 5. Battery (Wrongful Death) <br> 6. Negligence (N.I.E.D. and Wrongful Death) <br> 7. State Civil Rights Violations (Cal. Civil Code § 52.1, Cal. Const., common law) <br><br> **DEMAND FOR JURY TRIAL** |

- 1 -
COMPLAINT FOR DAMAGES

## COMPLAINT FOR DAMAGES

Plaintiffs GLADIS HERRERA, IVAN HERRERA and MARLON HERRERA, individually and as successor in interest to JOSE RAUL HERRERA, for their complaint against Defendants CITY OF ONTARIO and DOES 1-10 inclusive, hereby allege as follows:

## INTRODUCTION

1.  This is a civil rights lawsuit, in which Plaintiffs seek damages arising from the fatal May 10, 2014 shooting of Jose Raul Herrera by City of Ontario Police Officers.  Plaintiffs seek compensatory damages, punitive damages, attorneys' fees, and costs from defendants for violating various rights guaranteed to the decedent and to plaintiffs by the Bill of Rights, the United States Constitution, the California Constitution and the laws of the State of California.

## PARTIES

2.  At all relevant times, decedent Jose Raul Herrera ("DECEDENT" or "MR. HERRERA") was an individual residing in the City of Ontario, California.

3.  Plaintiff GLADIS HERRERA is the wife of Mr. Herrera.  At all relevant times, GLADIS HERRERA resided and currently resides in the City of Ontario, California.  GLADIS HERRERA sues in her individual capacity for wrongful death damages and in a representative capacity as successor in interest to Mr. Herrera.  In her individual capacity, GLADIS HERRERA seeks wrongful death damages under federal and state law for violations of her rights.  In her representative capacity, GLADIS HERRERA seeks survival damages under federal and state law for violations of her husband's rights.

4. Plaintiff IVAN HERRERA is the adult son of Mr. Herrera.  At all relevant times, IVAN HERRERA resided and currently resides in the City of Ontario, California.  IVAN HERRERA sues in his individual capacity for personal damages, wrongful death damages and in a representative capacity as successor in interest to Mr.

Herrera.  In his individual capacity, IVAN HERRERA seeks wrongful death damages under federal and state law for violations of his rights.  IVAN HERRERA also seeks damages on his own behalf arising out of the defendants' negligence and use of unreasonable deadly force against his father, which IVAN HERRERA observed and perceived and which caused his father's death.  In his representative capacity, IVAN HERRERA seeks survival damages under federal and state law for violations of his father's rights.

5.     Plaintiff MARLON HERRERA is the adult son of Mr. Herrera.  At all relevant times, MARLON HERRERA resided and currently resides in the City of Ontario, California.  MARLON HERRERA sues in his individual capacity for personal damages, wrongful death damages and in a representative capacity as successor in interest to Mr. Herrera.  In his individual capacity, MARLON HERRERA seeks wrongful death damages under federal and state law for violations of his rights. MARLON HERRERA also seeks damages on his own behalf arising out of the defendants' negligence and use of unreasonable deadly force against his father, which MARLON HERRERA observed and perceived and which caused his father's death. In his representative capacity, MARLON HERRERA seeks survival damages under federal and state law for violations of his father's rights.

6.     At all relevant times, Defendant CITY OF ONTARIO ("CITY") is and was a duly organized public entity, form unknown, existing under the laws of the State of California.  At all relevant times, CITY was the employer of DOES 1-10.  The individual officer defendants and DOES 1-10 are sued in their individual capacities for damages only.  As set forth below, Plaintiffs allege that the CITY is directly liable for compensatory damages under federal law pursuant to *Monell v. Department of Soc. Svcs.*,436 U.S. 658 (1978) and its progeny.  Plaintiffs allege that the CITY is vicariously liable for compensatory damages under Plaintiffs' state law claims, given Plaintiffs' allegation that the officers who committed the acts and omissions

complained of herein were acting in the course and scope of their employment at the time that the acts and omissions occurred.  Plaintiffs make no claim for punitive damages against the CITY.

7.     At all relevant times, Defendants DOES 1-10 were duly appointed CITY Police Officers and/or employees or agents of CITY, subject to oversight and supervision by CITY's elected and non-elected officials and/or were managerial, supervisory or policy-making officials of the CITY of ONTARIO Police Department. At all relevant times, DOES 1-10 acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of defendant CITY OF ONTARIO, the CITY OF ONTARIO POLICE DEPARTMENT, and under the color of the statutes and regulations of the State of California.

8.     The true names of defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs at this time, who therefore sue these defendants by such fictitious names.  Plaintiffs will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained. Each of the fictitious named defendants is responsible in some manner for the conduct and liabilities alleged herein.

9.     In committing the acts and omissions hereinafter described, Defendants DOES 1-10 were acting on the implied and actual permission and consent of CITY.  In committing the acts and omissions hereinafter described, Defendants DOES 1-10 were acting in the course and scope of their employment as CITY OF ONTARIO Police Officers.

10.     At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every defendant.

11.     Pursuant to Cal. Govt. Code § 815.2(a), CITY is vicariously liable for the nonfeasance and malfeasance of DOES 1-10 as alleged by Plaintiffs' state law claims.

("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.").  DOES 1-10 are liable for their nonfeasance and malfeasance pursuant to Cal. Civ. Code § 820(a).  CITY is also liable pursuant to Cal. Govt. Code § 815.6.

12.     On November 6, 2014, Plaintiffs filed comprehensive and timely claims for damages with CITY pursuant to applicable sections of the California Government Code.

13.     Plaintiffs' claims were rejected on January 13, 2015.

## JURISDICTION AND VENUE

14.     This civil action is brought for the redress of alleged deprivations of rights under the laws of the State of California and of constitutional rights protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the First, Fourth, and Fourteenth Amendments to the United States Constitution.  Jurisdiction is founded on 28 U.S.C. §§ 1331, 1334, and 1367.

15.     Venue is proper in this Court under 28 U.S.C. §1391(b), because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in the City of Ontario, County of San Bernardino, California.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

16.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 15 of this Complaint with the same force and effect as if fully set forth herein.

17.     The incident upon which this action is based occurred in the evening hours on May 10 2014, on the 900 block of North Placer Ave in the City of Ontario, California.

18.     At the time of this incident, Decedent Jose Raul Herrera ("Mr. Herrera") was a 59 year-old Hispanic male who was a husband, father and grandfather.

19.     On May 10, 2014, the plaintiffs and Mr. Herrera held and attended a Mother's Day family barbeque at the family residence on Placer Ave.  At or around 10:30 pm, IVAN HERRERA suspected that his father, Mr. Herrera, may have either suffered a mild stroke or that he was suffering from a heart-related medical problem.  IVAN HERRERA suspected that his father was in pain.  IVAN notified his brother, MARLON HERRERA, called 911 and requested medical assistance for his dad.  Mr. Herrera's two sons, IVAN AND MARLON, then attended to their dad.

20.     When paramedics arrived, IVAN and MARLON agreed to assist them in rendering aid to their dad.  IVAN HERRERA stated that the family did not need the police.

21.     Mr. Herrera was on the sidewalk of North Placer Ave with his two sons IVAN AND MARLON when CITY police officers arrived.  Multiple CITY police units stopped on the street and DOES 1-10 exited their police vehicles.

22.     DOE 1 drew and pointed his gun at Mr. Herrera.  DOE 2 drew and pointed his TASER at Mr. Herrera.  DOES 1 and 2 were assisted by one or more additional DOE Officers.  IVAN HERRERA said, "My dad has a heart condition."  MARLON HERRERA said, "Don't tase him, he has a heart condition".  MARLON also told the officers that Mr. Herrera carries a pocket knife and that he would take it from his father.

23.     DOES 1-10 tased, shot, and killed Mr. Herrera.  DOES 1-10 issued no commands or warnings before they tased and shot Mr. Herrera.

24.     At all times prior to the deployment of the TASER and the multiple gunshots fired by DOES 1-10: Mr. Herrera had not committed any crime; DOES 1-10 had no information that any crime had been committed; DOES 1-10 had no information that Mr. Herrera was a suspect in any crime; DOES 1-10 had no information that anyone was injured, other than Mr. Herrera, who was the subject of his son's 911 call for medical help; Mr. Herrera never verbally threatened DOES 1-10

anyone; Mr. Herrera never attempted to harm or did harm either DOES 1-10 or anyone else; Mr. Herrera's arms were down by his sides; the pocket knife in Mr. Herrera's possession was closed; the blade of the pocket knife in Mr. Herrera's possession was not visible; Mr. Herrera never lunged at anyone; Mr. Herrera never charged at anyone; Mr. Herrera neve raised the pocket knife over his head or made any stabbing motions toward anyone; and Mr. Herrera never took any threatening steps toward anyone.

25.     59 year old Mr. Herrera fell to the ground when he was tased and shot multiple times.  Despite his wounds, DOES 1-10 rolled him over onto his stomach and handcuffed his wrists behind his back.  When Mr. Herrera lifted his head and expressed pain, DOES 1-10 pushed Mr. Herrera's face to the ground.  DOES 1-10 denied requests by witnesses that they provide medical care to Mr. Herrera.  DOES 1-10 also denied the paramedic's requests to access Mr. Herrera.  Mr. Herrera eventually died at the scene.  Plaintiffs are informed and thereon believe that Mr. Herrera suffered great physical and emotional pain while he lay unattended to in the street until he died.

26.     IVAN HERRERA and MARLON HERRERA were present and standing within feet of their father when he was tased, shot, and killed by DOES 1-10.  IVAN HERERRA and MARLON HERERRA observed the tasing and shooting of their father by DOES 1-10.  IVAN and MARLON HERERRA also observed their father on the ground, bleeding, expressing pain, and they watched and or were aware that no medical care was being provided to Mr. Herrera, even though paramedics arrived before the shooting took place.

27.     As a direct and proximate result of DOES' actions, omissions and misjudgment, Mr. Herrera suffered severe and fatal injuries, physical and emotional pain up until the time he died and ultimately, death.

28.     As a direct and proximate result of DOES' actions, omissions and misjudgment, which were perceived by plaintiffs IVAN and MARLON HERRERA, IVAN and MARLON HERRERA were caused to suffer emotional distress including

but not limited to suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame.

29.    As a direct and proximate result of DOES' actions, omissions and misjudgment, Plaintiffs in their individual capacities suffered the loss of their husband and father, including the loss of his financial support, gifts and benefits, funeral and burial expenses, household services and his love, companionship, comfort, care, assistance, protection, affection, society, moral support, training and guidance. GLADIS HERRERA also suffered a loss of consortium.

30.  Plaintiffs are informed and thereon believe and allege that defendants agreed and conspired to justify and cover up the misconduct alleged herein by, among other things, preparing and filing false reports regarding the shooting incident that led to the death of Decedent and the injuries to plaintiffs.  Plaintiffs are informed and thereon believe that DOES 1-10 made false statements that the decedent posed a threat at the time of the shooting and that information was provided to them concerning the decedent that they never, in fact, received.  Plaintiffs are also informed and thereon believe that DOES 1-10 omitted material information from their reports concerning the circumstances known to them when they encountered plaintiffs and Mr. Herrera.

## **FIRST CLAIM FOR RELIEF**

### **Fourth Amendment Unreasonable Seizure**

### **Excessive Force (42 U.S.C. §1983)**

(by all Plaintiffs in their representative capacity as successors in interest to Jose Raul Herrera against DOES 1-10)

31. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 30 of this Complaint with the same force and effect as if fully set forth herein.

32.    The Fourth Amendment to the United States Constitution guarantees all persons the right to be free from excessive force by peace officers.  42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.

33.     On May 10, 2014, Defendants DOES 1-10 seized Mr. Herrera when they tased him and fired multiple gunshots at him, striking him in multiple places and eventually, killing him.  Within seconds of their arrival, DOES 1-10 tased, shot, and killed Mr. Herrera.  DOES 1-10 issued no warnings before they tased and shot Mr. Herrera.  DOES 1-10 issued no commands before they tased and shot Mr. Herrera. DOES 1-10 made no efforts to de-escalate the situation upon their arrival.

34.     At all times prior to the deployment of the TASER and the multiple gunshots fired by DOES 1-10: Mr. Herrera had not committed any crime; DOES 1-10 had no information that any crime had been committed; DOES 1-10 had no information that Mr. Herrera was a suspect in any crime; DOES 1-10 had no information that anyone was injured, other than Mr. Herrera, who was the subject of his son's 911 call for medical help; Mr. Herrera never verbally threatened DOES 1-10 anyone; Mr. Herrera never attempted to harm or harm either DOES 1-10 or anyone else; Mr. Herrera's arms were down by his sides; the pocket knife in Mr. Herrera's possession was closed; the blade of the pocket knife in Mr. Herrera's possession was not visible; Mr. Herrera never lunged at anyone; Mr. Herrera never charged at anyone; Mr. Herrera never raised the pocket knife over his head or made any stabbing motions toward anyone; and Mr. Herrera never took any threatening steps toward anyone.

35.     The use of potentially deadly and deadly force by DOES 1-10 on May 10, 2014 violated Mr. Herrera's right to be free from excessive force by peace officers, which is guaranteed to them by the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment when they shot and killed him.

36.     Defendants DOES 1-10 were integral participants and failed to intervene with respect to the use of deadly force against Mr. Herrera, despite the opportunity to do so.

37.     The conduct DOES 1-10 was malicious, oppressive and in reckless disregard for the rights and safety of Mr. Herrera (and of nearby bystanders) and warrants the imposition of exemplary and punitive damages as to DOES 1-10.

38.     This claim is made by Mr. Herrera's successors-in-interest on his behalf for survival damages.  As a direct result of the excessive force used by DOES 1-10 against Mr. Herrera, he experienced severe pain and suffering prior to his death and he lost his life for which he is entitled to recover damages.

39.     Plaintiffs also seek attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of suit.

## SECOND CLAIM FOR RELIEF

### Fourth Amendment Unreasonable Seizure

### Denial of Medical Care (42 U.S.C. §1983)

(by all Plaintiffs in their representative capacity as successors in interest to Jose Raul Herrera against DOES 1-10)

40.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 40 of this Complaint with the same force and effect as if fully set forth herein.

41.     Pursuant to the Fourth Amendment to the United States Constitution, all law enforcement officers have a duty to provide medical care to persons who are injured while being apprehended and taken into custody.  This includes the duty to either administer medical care or ensure that medical care is promptly provided.  This also encompasses the requirement that peace officers may not delay an arrestee access to medical care without reason. *City of Revere v. Massachusetts General Hosp.*,463 U.S. 239, 233-234 (1983); *Arum v. Miller,* 331 F.Supp.2d 99, 111 (E.D.N.Y.2004); *Freece v. Young*, 756 F. Supp. 699, 701 (W.D.N.Y. 1991).

42.     42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.

43.     59 year old Mr. Herrera fell to the ground when he was tasered and shot multiple times.  Despite his wounds, DOES 1-10 rolled him over onto his stomach and handcuffed his wrists behind his back.  When Mr. Herrera lifted his head and expressed pain, DOES 1-10 pushed Mr. Herrera's face to the ground.  DOES 1-10 denied requests by witnesses that they provide medical care to Mr. Herrera.  DOES 1-10 also denied the paramedic's requests to access Mr. Herrera and administer medical care.  Mr. Herrera eventually died at the scene.  Plaintiffs are informed and thereon believe that Mr. Herrera suffered great physical and emotional pain while he lay unattended to in the street and until he died.  Plaintiffs are further informed and thereon believe that the delay and or denial of medical care to Mr. Herrera by DOES 1-10 contributed to Mr. Herrera's pain and suffering and contributed to the worsening of his injuries, including his cause of death.

44.     Defendants DOES 1-10 were integral participants and failed to intervene with respect to the delay and denial of medical care to Mr. Herrera, despite the opportunity to do so.

45.     The conduct DOES 1-10 was malicious, oppressive and in reckless disregard for the rights and safety of Mr. Herrera (and of nearby bystanders) and warrants the imposition of exemplary and punitive damages as to DOES 1-10.

46.     This claim is made by Mr. Herrera's successors-in-interest on his behalf for survival damages.  As a direct result of the denial and delay of medical care to Mr. Herrera, he experienced severe pain and suffering prior to his death and he lost his life for which he is entitled to recover damages.

47.     Plaintiffs also seek attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of suit.

///

## **THIRD CLAIM FOR RELIEF**

### **Substantive Due Process (42 U.S.C. §1983)**

(by all Plaintiffs in their individual capacities against DOES 1-10)

48.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 47 of this Complaint with the same force and effect as if fully set forth herein.

49.     The substantive due process clause of the Fourteenth Amendment to the United States Constitution guarantees all persons the right to be free from unlawful state interference with their familial relations.  42 U.S.C. § 1983 provides a private right of action for conduct which violates this right. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (noting that substantive due process violations are actionable under § 1983).

50.  The United States Constitution protects all persons from interference with relationships such as "'those that attend the creation and sustenance of a family' and similar 'highly personal relationships.'" *IDK, Inc. v. Clark County*, 836 F.2d 1185, 1193 (9th Cir. 1988), citing *Roberts v. United States Jaycees*, 468 U.S. 609, 618-19 (1988).  Specifically, the right to be free from unlawful state interference with the familial relationship enjoyed between parents and children is a protected liberty interest rooted in the due process clause of the Fourteenth Amendment. *Curnow By & Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991), citing *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir.1986); *Kelson v. City of Springfield*, 767 F.2d 651, 653–55 (9th Cir.1985);  *Smith v. City of Fontana*, 818 F.2d 1411, 1419 (9th Cir.), cert. denied, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987).

51.     When DOES 1-10 arrived in response to a call for medical help, they deployed a TASER and fired multiple gunshots at Mr. Herrera.  DOES 1-10 issued no commands to Mr. Herrera and gave him no warning before they used force against him and took his life.  Mr. Herrera committed no crime, was the subject of his son's 911

call for medical help, he did not threaten anyone, he did not attempt to harm anyone, his arms were down by his sides, the pocket knife in his possession was closed, the blade of the pocket knife in Mr. Herrera's possession was not visible, he never lunged at anyone, he never charged at anyone, he never raised the pocket knife over his head or made any stabbing motions toward anyone and he never took any threatening steps toward anyone.  DOES 1-10 had no information that any crime had been committed. DOES 1-10 had no information that Mr. Herrera was a suspect in any crime. DOES 1-10 had no information that anyone was injured, other than Mr. Herrera.  The use of force by DOES 1-10 without any warning under these circumstances was unreasonable, excessive under the circumstances, exhibited a deliberate indifference to and reckless disregard for to Mr. Herrera and plaintiffs' rights, and displayed a purpose to harm Mr. Herrera unrelated to a legitimate law enforcement objective.  In so doing, the conduct of DOES 1-10 constitutes a violation of plaintiffs' Fourteenth Amendment substantive due process right to be free from unlawful state interference with their familial relationship with their husband and father.

52.     Defendants DOES 1-10 were each integral participants and/or failed to intervene with respect to the other officers' unlawful conduct, despite the opportunity to do so.

53.     The conduct of Defendants DOES 1-10 was malicious, oppressive and in reckless disregard for the rights and safety of Mr. Herrera and plaintiffs and warrants the imposition of exemplary and punitive damages as to the individual defendants.

54.     As a direct result of the death of Mr. Herrera, Plaintiffs have suffered the loss of M r. Herrera's love, care, comfort, society, companionship, assistance, protection, affection, moral support, financial support, and loss of services of DECEDENT.  GLADIS HERRERA also seeks damages for loss of consortium. All plaintiffs seek wrongful death damages under this claim.

55.   Plaintiffs also seek attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of suit.

## FOURTH CLAIM FOR RELIEF

### Municipal Liability for Unconstitutional Custom or Policy

### (42 U.S.C. §1983)

### (by all Plaintiffs against Defendant CITY of ONTARIO)

56. Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 55 of this Complaint with the same force and effect as if fully set forth herein.

57.  A municipality is liable for the constitutional deprivations of an individual where its officials or employees, acting under color of law, deprived a person of their particular rights under the constitution and where either: the officials or employees acted pursuant to an adopted policy, custom, or practice; the acts of a final policy maker deprived a person of their constitutional rights by knowing about and approving of an employees' acts or omissions; or the constitutional deprivations were a result of the municipality's failure to train its employees to handle the usual and recurring situations with which they must deal. *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

58.  On and for some time prior to and after May 10, 2014 (and continuing to the present date), Defendant CITY deprived plaintiffs, DECEDENT and other members of the public of their rights and liberties secured to them by the Fourth and Fourteenth Amendments to the United States Constitution by knowingly maintaining, enforcing and applying an official custom, policy, and practice of:

(a) Employing and retaining CITY Police Officers, including Defendants DOES 1-10, who Defendant CITY at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written

CITY Police Department policies concerning the use of deadly force and responding to calls for medical care;

(b) Inadequately supervising, training, controlling, assigning, and disciplining CITY Police Officers, including DOES 1-10, concerning the use of deadly force and responding to calls for medical care;

(c) Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by DOES 1-10, and other CITY police officers;

(d) Ratifying the misconduct of and unlawful uses of excessive force by CITY Officers, including DOES 1-10 and other CITY police officers (including but not limited to the misconduct and excessive force used by Defendants against Mr. Herrera on May 10, 2014);

(e) Failing to discipline DOES 1-10 and other CITY Officers for conduct contrary to law and departmental policy (including, but not limited to the misconduct and excessive force used by Defendants against Mr. Herrera on May 10, 2014 and the false statements and material omissions in the reports of DOES 1-10);

(f) Failing to retrain DOES 1-10 and other CITY Officers concerning the use of force and responding to calls for medical care despite the fact that complaints of excessive force and false statements have been filed against CITY Officers with the CITY, in the Superior Courts and in the District Courts;

(g) Failing to properly investigate claims of excessive force and false statements or reports by CITY Police Officers;

(h) Conspiring to give a false account of the incident to attempt to justify the use of excessive force; and

(i) By having and maintaining an unconstitutional policy, custom, and practice of using excessive force, including deadly force, which also is demonstrated by inadequate training regarding these subjects. The policies, customs, and practices of CITY, were done with a deliberate indifference to individuals' safety and rights.

59.     Failing to adequately train, discipline, retrain, and investigate concerning allegations and incidents of excessive force by CITY Officers, in combination with CITY's ratification of said complaints and incidents, has given rise to a culture of impunity within the CITY of Ontario Police Department.  The CITY's actions and inactions have caused CITY Officers to disregard proper police procedures and the law concerning the use of force in the exercise of their authority as peace officers and during their day-to-day interactions with civilians.

60.  The CITY's actions and inactions as described above were the moving force behind the use of excessive force against Mr. Herrera by DOES 1-10 on May 10, 2014.

61. By reason of the aforementioned policies and practices of Defendant CITY, Mr. Herrera was severely injured and subjected to pain and suffering and lost his life for which he, by plaintiffs as his successors in interest, is entitled to recover survival damages.

62.     Plaintiffs also seek wrongful death damages under this claim.

63.     Plaintiffs also seek attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of suit.

## FIFTH CLAIM FOR RELIEF

### Battery (Cal. Govt. Code §820 and California Common Law)

### (Wrongful Death)

(by all plaintiffs in their individual capacities against all defendants)

64.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 63 of this Complaint with the same force and effect as if fully set forth herein.

65.   DOES 1-10, while working as CITY Police Officers and acting within the course and scope of their employment, intentionally shot Mr. Herrera.  The shooting was a use of unreasonable force against Mr. Herrera to which he did not consent.  As a result of the actions of Defendants DOES 1-10, Mr. Herrera suffered severe pain and suffering and ultimately died from his injuries.

66.   As a direct and proximate result of defendants' conduct as alleged above, plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care, financial support, affection, training and guidance and consortium (for Mrs. Herrera only), and will continue to be so deprived for the remainder of their natural lives.  CITY is vicariously liable for the wrongful acts of the individual defendants pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's acts would subject him or her to liability.

67.  The conduct of defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of plaintiffs and DECEDENT, entitling plaintiffs, individually, to an award of exemplary and punitive damages.

### SIXTH CLAIM FOR RELIEF

**Negligence (Cal. Govt. Code §820 and California Common Law)**

**(Wrongful Death and Negligent Infliction of Emotional Distress)**

(by all plaintiffs against all defendants)

68.  Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 67 of this Complaint with the same force and effect as if fully set forth herein.

69.  The actions and inactions of the defendants DOES 1-10 were negligent and reckless, including, but not limited to:

(a) the failure to properly and adequately assess the need to use force and deadly force against DECEDENT;

(b) the negligent preshooting tactics and handling of the situation with DECEDENT;

(c) the negligent manner in which information was misstated and omitted from police reports following the incident;

(d) the failure to properly train and supervise employees, both professional and non-professional, including Defendants DOES 1-10;

(e) the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of DECEDENT;

(f) the negligent use of force against DECEDENT; and

(g) the negligent manner in which DOES 1-10 delayed and or denied Mr. Herrera access to medical care after their use of force against him.

70.    As a direct and proximate result of defendants' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT was caused to suffer severe pain and suffering and ultimately died.  Also as a direct and proximate result of defendants' conduct as alleged above causing Mr. Herrera's death, plaintiffs have also been deprived of the life-long love, companionship, comfort, society, care, and financial support of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

71.    IVAN HERRERA and MARLON HERRERA were present and standing within feet of their father when he was tased, shot, and killed by DOES 1-10.  IVAN HERERRA and MARLON HERERRA observed the tasing and shooting of their father by DOES 1-10.  IVAN and MARLON HERERRA also observed and or perceived their father on the ground, bleeding, expressing pain, and they watched and were aware that no medical care was being provided to Mr. Herrera, even though paramedics arrived before the shooting took place.

72.     As a direct and proximate result of actions, omissions and misjudgment of DOES 1-10, which were perceived by plaintiffs IVAN and MARLON HERRERA, IVAN and MARLON HERRERA were caused and continue to suffer emotional distress including but not limited to suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame.

73.     CITY is vicariously liable for the wrongful acts of Defendants DOES 1-10, inclusive, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

74.     All plaintiffs bring this claim on their own behalves and seek wrongful death damages under state law.  Plaintiffs IVAN HERRERA AND MARLON HERRERA also seek damages for negligent infliction of emotional distress under state law.

### SEVENTH CLAIM FOR RELIEF

**Violation of Cal. Civ. Code §52.1 and California Common Law)**

(Survival Claim by all plaintiffs in their representative capacities as successors in interest to and on behalf of Jose Raul Herrera against all defendants)

75.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 74 of this Complaint with the same force and effect as if fully set forth herein.

76.     The Bane Act, the California Constitution and California common law prohibit the use of excessive force by law enforcement. California Civil Code, Section 52.1(b) authorizes a private right of action and permits survival actions for such claims. *See Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal.App.4th 141, 144 (1995).  "[A] successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105-06 (9th Cir. 2014); citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir.2013) ("[T]he elements of the excessive force claim under § 52.1

are the same as under § 1983."); *Bender v. Cnty. of L.A.*, 217 Cal.App.4th 968, 976 (2013) ("an unlawful [seizure]—when accompanied by unnecessary, deliberate and excessive force—is [] within the protection of the Bane Act").

77. DOES 1-10 violated Mr. Herrera's Fourth Amendment rights to be free from unreasonable seizures when they used excessive and unreasonable force against him, killing him.

78. Mr. Herrera was caused to suffer severe pain and suffering and ultimately died for which he, by plaintiffs as his successors in interest, is entitled to recover survival damages.

79. The conduct of Defendants DOES 1-10 was a substantial factor in causing the harm, losses, injuries, and damages of Mr. Herrera.

80. CITY is vicariously liable for the wrongful acts of DOES 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's acts would subject him or her to liability.

81. The conduct of DOES 1-10 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Mr. Herrera, entitling him to an award of exemplary and punitive damages.

82. Plaintiffs also seek costs and attorney fees under this claim pursuant to subsection (h).

///

# **PRAYER FOR DAMAGES**

WHEREFORE, plaintiffs request entry of judgment in their favor and against Defendants CITY OF ONTARIO and DOES 1-10, inclusive, as follows:

A. For compensatory damages, including both survival damages and wrongful death damages under federal and state law in an amount to be proven at trial;

B. For funeral and burial expenses and loss of financial support;

C. For negligent infliction of emotional distress damages for IVAN and MARLON HERRERA;

D. For punitive damages against the individual defendants DOES 1-10 in an amount to be proven at trial;

E. For interest;

F. For reasonable costs of this suit and attorney's fees under state and federal law;

G. For such further relief at law or equity as the Court or jury may deem just and appropriate.

Dated:  July 9, 2015               LAW OFFICES OF DALE K.GALIPO
                                   LAW OFFICES OF LUIS A. CARRILLO

                                    /s Melanie T. Partow

_____            _____

                                   Dale K. Galipo
                                   Luis A. Carrillo
                                   Melanie T. Partow
                                   Attorneys for Plaintiffs

## __DEMAND FOR JURY TRIAL__

Plaintiffs hereby demand a trial by jury.

Dated:  July 9, 2015                    LAW OFFICES OF DALE K.GALIPO
                                        LAW OFFICES OF LUIS A. CARRILLO


                                         s/Melanie T. Partow
_____    _____
                                        Dale K. Galipo
                                        Luis A. Carrillo
                                        Melanie T. Partow
                                        Attorneys for Plaintiffs